REDACTED VERSION - PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICROSTRATEGY INCORPORATED,

        Plaintiff,

        v.

CRYSTAL DECISIONS, INC. d/b/a BUSINESS
OBJECTS AMERICAS,

        Defendant.

Civil Action No. 03-1124 KAJ

**CONFIDENTIAL--FILED UNDER SEAL**

BUSINESS OBJECTS AMERICAS,

        Counterclaimant,

        v.

MICROSTRATEGY INCORPORATED,

        Counterdefendant.

**DEFENDANT BUSINESS OBJECTS AMERICAS' BRIEF IN SUPPORT OF MOTION
FOR ATTORNEY FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285**

OF COUNSEL:

Daniel J. Furniss
Joseph A. Greco
Thomas F. Fitzpatrick
TOWNSEND AND TOWNSEND
  AND CREW LLP
379 Lytton Avenue
Palo Alto, California 94301-1431
(650) 326-2400

YOUNG CONAWAY STARGATT
  & TAYLOR LLP
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
302-571-6600
jshaw@ycst.com

*Attorneys for Defendant and
  Counterclaimant*

Dated: March 15, 2006

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.   SUMMARY OF ARGUMENT ................................................................................ 1

III.   FACTS ............................................................................................................... 3

IV.   ARGUMENT ....................................................................................................... 5

    A.    The Court May Award Business Objects Its Reasonable Attorney Fees And Expenses Incurred In Successfully Defending This Case. .................................... 5

    B.    The Court Should Award Business Objects Its Attorney Fees and Expenses Because MicroStrategy's Infringement Case On All Three Patents Was Vexatious, Unjustified And In Bad Faith. ............................................................. 7

        1.    MicroStrategy's baseless infringement allegations are analogous to the defenses of willful infringers, against whom courts routinely award fees and costs under 35 U.S.C. § 285. .................................................................... 7

        2.    MicroStrategy's infringement case on the '033 patent was baseless. ......... 8

        3.    MicroStrategy's infringement case on the invalid '796 patent was baseless. .................................................................................................. 12

        4.    MicroStrategy's infringement case on the invalid '432 patent was baseless. .................................................................................................. 14

    C.    The Attorney Fees and Expenses That Business Objects Requests Are Reasonable And Sufficiently Documented. ........................................................ 16

V.   CONCLUSION ................................................................................................... 20

**TABLE OF AUTHORITIES**

Page

Cases

*Amsted Indus., Inc. v. Buckeye Steel Castings Co.,*
23 F.3d 374 (Fed. Cir. 1994)...............................................................................................6

*Automated Business Cos. v. NEC Am., Inc.,*
202 F.3d 1353, 1355 (Fed. Cir. 2000)..............................................................................1, 6

*C.R. Bard, Inc. v. United States Surgical Corp.,*
258 F. Supp. 2d 355 (D. Del. 2003).....................................................................................6

*Central Soya Co. v. George A. Hormel & Co.,*
723 F.2d 1573 (Fed. Cir. 1983).............................................................................................6

*Eltech Sys. Corp. v. PPG Indus., Inc.,*
903 F.2d 805, 811 (Fed. Cir. 1990).......................................................................6, 8, 14, 16

*eSpeed, Inc. v. Brokertec USA, L.L.C.,*
C.A. No. 03-612-KAJ, 2006 U.S. Dist. LEXIS 6638, at *51 (D. Del. Feb.
22, 2006)...........................................................................................................................6, 7, 8

*Lewmar Marine, Inc. v. Barient, Inc.,*
827 F.2d 744 (Fed. Cir. 1987)..............................................................................................12

*Mathis v. Spears,*
857 F.2d 749 (Fed. Cir. 1988)...........................................................................8, 13, 16, 19

*MLMC, Ltd. v. Airtouch Communications, Inc.,*
C.A. No. 99-781-SLR, slip op. at 1-2 (D. Del. Sept. 19, 2002).....................................1, 6

*Multi-Tech, Inc. v. Components, Inc.,*
708 F. Supp. 615 (D. Del. 1989)..........................................................................................11

*Novo Indus., L.P. v. Micro Molds Corp.,*
350 F.3d 1348 (Fed. Cir. 2003)............................................................................................14

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.,*
840 F.2d 1565 (Fed. Cir. 1988)............................................................................................19

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
781 F.2d 198 (Fed. Cir. 1986).............................................................................................6, 8

*Scott Paper Co. v. Moore Business Forms, Inc.,*
604 F. Supp. 835 (D. Del. 1984)............................................................................................5

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
932 F.2d 1453 (Fed. Cir. 1991)............................................................................................19

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
  127 F.3d 1462 (Fed. Cir. 1997) ............................................................................................... 7

*Standard Oil Co. v. American Cyanamid Co.,*
  774 F.2d 448 (Fed. Cir. 1985) ................................................................................................ 6

**Statutes**

35 U.S.C. § 102 ............................................................................................................................. 13

35 U.S.C. § 284 ............................................................................................................................... 8

35 U.S.C. § 285 .................................................................................. 1, 3, 5, 6, 7, 8, 11, 17, 19, 20

Fed.R.Civ.P. 54 ......................................................................................................................... 6, 19

DB02:5229759.1

900002.0011

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The Court granted in part Business Objects' motions for summary judgment on January 23, 2006.  On that date, the Court entered a Memorandum Opinion (D.I. 239) (hereinafter "Mem. Opp.") and an Order (D.I. 240).  The Court ruled that the asserted claims of MicroStrategy's U.S. Patent No. 6,567,796  ("the '796 patent") and U.S. Patent No. 6,658,432 ("the '432 patent") are invalid, and that Business Objects has not infringed the asserted claims of MicroStrategy's U.S. Patent No. 6,279,033 ("the '033 patent").  The parties subsequently stipulated that Business Objects' counterclaim seeking a declaration that the '033 patent is invalid would be dismissed without prejudice, and the Court entered its order to that effect (D.I. 242) on February 7, 2006. The Court entered final judgment (D.I. 245) on February 23, 2006.

## II.     SUMMARY OF ARGUMENT

1.      The Court should find this to be an exceptional case within the meaning of 35 U.S.C. § 285 and should award Business Objects its reasonable attorney fees and expenses incurred in defending this case.  MicroStrategy forced Business Objects to spend millions of dollars to unravel and defeat a complicated, three-patent, 33-claim case.  Business Objects proved that there was no merit whatsoever underlying MicroStrategy's numerous and complicated allegations.  If a defendant had come forward with similarly unjustified *defenses* to a charge of infringement, it would be adjudged a willful infringer and the plaintiff would be awarded its attorney fees and costs almost as matter of course.  It would be equally unfair to force this defendant, Business Objects, to bear the expense of MicroStrategy's unjustified charges of infringement.  As Chief Judge Robinson wrote:  "Where the prevailing party is an accused infringer, the purpose of § 285 is to remedy the injustice to a party that must expend significant sums to defend itself against unfounded charges of patent infringement or vexatious litigation." *MLMC, Ltd. v. Airtouch Communications, Inc.*, C.A. No. 99-781-SLR, slip op. at 1-2 (D. Del. Sept. 19, 2002) (citing *Automated Business Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000)) (copy attached to the accompanying Greco Declaration ["Greco Decl."] as Ex. 1).

2.    The exceptional nature of this case is proved by the way MicroStrategy litigated it. While MicroStrategy refused Business Objects' requests to voluntarily narrow the scope of the asserted claims prior to claim construction and motions, MicroStrategy abandoned 16 of the 33 claims two days before its oppositions to Business Objects' summary judgment motions were due. MicroStrategy's remaining infringement theory on 3 claims of the '033 patent not only was frivolous, but also was a "do-over," submitted in its expert witness's post-deposition "supplemental" report, after the expert had admitted that MicroStrategy's initial theory on those claims was wrong. MicroStrategy's assertion of the '796 and '432 patents turned a blind eye towards the overwhelming invalidity evidence that Business Objects disclosed early in the case. MicroStrategy did not even submit countervailing evidence on these validity issues, choosing instead to incorrectly argue that Business Objects' proof was not sufficient. The Court rejected MicroStrategy's arguments and dismissed the remaining 17 claims of all three patents on summary judgment.

3.    MicroStrategy cannot claim that is was surprised by the existence or the strength of Business Objects' defenses. Business Objects disclosed its defenses relatively early in the case, especially when viewed in terms of the fees and expenses incurred after those disclosures. Moreover, MicroStrategy was well aware when it filed this case that: (i) it never had disclosed to the Patent Office the prior art products of its competitors (Actuate e.Reporting Suite 4 and Seagate Crystal Info 6) which invalidated the claims of the '432 and '796 patents, and thus the Patent Office had not found the claims patentable over that prior art; (ii) the '432 patent, claims 6, 9, 10, and 13, had a glaring error--a "dangling" verb ("using") without an object--and were thus indefinite and not subject to correction by the Court under clear, controlling Federal Circuit case law; (iii) the claims of the '432 patent were improperly broad (indeed, even MicroStrategy's own expert witness, Dr. Alexander, could not explain in deposition how they possibly could constitute patentable inventions); and (iv) the prior art Seagate Crystal Info 6 product was simply an earlier, substantially identical version of the Business Objects' products (Crystal Enterprise 9 and 10 and

Business Objects XI) that MicroStrategy accused of infringing the '796 patent. The standards the Federal Circuit has established for awards under § 285--"unjustified" or "bad faith" or "vexatious" litigation--describe the case MicroStrategy insisted on prosecuting here.

4.       The fees and expenses Business Objects seeks are reasonable due to the magnitude and complexity of the case that MicroStrategy insisted on prosecuting. Business Objects' outside counsel's rates are within community norms for complicated, highly technical patent litigation. The amount of time and expense incurred was necessary to properly prepare defenses to a case that, if successful, could have severely impacted Business Objects' business. In the accompanying Fitzpatrick Declaration, Business Objects has summarized the monthly tasks performed and fees and expenses incurred. The total fees incurred and requested are: $4,297,079.47. The total other recoverable expenses incurred and requested are $417,104.94 (which includes the Young firm's fees and expenses). Business Objects respectfully requests that the Court award this amount or an amount that the Court otherwise determines is reasonable under the circumstances of this case. If the Court wants more information, documentation or analysis, Business Objects will supplement its proof as the Court directs.

## III.    FACTS

On December 10, 2003, MicroStrategy sued Crystal Decisions, Inc. for infringement of the '033, '796 and '432 patents. At that time, Business Objects had disclosed publicly that it was in the process of acquiring Crystal Decisions. *See* accompanying Fitzpatrick Declaration ("Fitzpatrick Decl."), ¶ 2. In fact, the acquisition closed the next day. *Id.* Also at that time, Business Objects and MicroStrategy were involved in two other lawsuits--one pending in the Northern District of California and the Federal Circuit, and the other pending in the Eastern District of Virginia. *Id.*, ¶ 2.

In the Virginia case, MicroStrategy sued Business Objects on the same '033 patent that it asserted in this case. MicroStrategy never even came forward with an expert report on infringement of the '033 patent in that case, and the district court ultimately dismissed

3

MicroStrategy's claim for relief. Fitzpatrick Decl., ¶ 3. The other patent MicroStrategy asserted in the Virginia case, U.S. Patent No. 6,260,050, is related to the '796 patent that MicroStrategy asserted in this case. The three named inventors are the same on both patents. As the patents' abstracts state, both patents relate to "generation of output from an on-line analytical processing system." The Virginia court granted Business Objects summary judgment of noninfringement of the '050 patent. Fitzpatrick Decl., ¶ 3. The Federal Circuit upheld that portion of the judgment on appeal. *Id.*

Business Objects answered MicroStrategy's complaint and filed a counterclaim in this case on January 15, 2004. There was a telephonic initial Rule 16 scheduling and planning conference on March 4, 2004. The Court set a pre-trial schedule and set trial to begin on November 7, 2005. *See* D.I. 17 (March 9, 2004 Scheduling Order).

Discovery commenced and both parties served contention interrogatories. On September 10, 2004 Business Objects served its supplemental responses to MicroStrategy's First Set of Interrogatories setting forth its noninfringement and invalidity contentions. Fitzpatrick Decl., ¶ 4.

The parties presented a technology tutorial to the Court on October 8, 2004.

Depositions of fact witnesses commenced in January 2005 and continued through May 2005. MicroStrategy deposed numerous Business Objects witnesses, including Ju Wu, the software architect who worked on the Seagate Crystal Info 6 product and who ultimately submitted the declaration on which the Court relied in granting summary judgment of the '796 patent's invalidity. MicroStrategy deposed Mr. Wu on January 27, 2005 and May 10, 2005. Fitzpatrick Decl., ¶ 5. On April 6, 2005, Business Objects deposed Paul Rogers, the software architect of the Actuate e.Reporting Suite 4 on which the Court relied in granting summary judgment of claims 1, 2, 4 and 5 of the '432 patent. *Id.* MicroStrategy's counsel cross-examined Mr. Rogers at that deposition. *Id.*

The parties exchanged expert reports on which they bore the burden of proof on February 22, 2005, and rebuttal expert reports on March 14, 2005. Fitzpatrick Decl., ¶¶ 6, 7. In February

2005, MicroStrategy requested adding Business Objects' new XI products to the case. The parties

stipulated to revise the pre-trial and trial schedule to allow for this, which the Court approved.

*Id.*, ¶ 5; D.I. 73. The parties exchanged supplemental expert reports concerning whether the new

Business Objects XI products infringed the patents-in-suit in June and July, 2005. *Id.*, ¶ 8. The

parties took expert depositions in August through October 2005. *Id.*, ¶ 9. On September 14,

2005, without Business Objects' or the Court's approval, MicroStrategy submitted the

Supplemental Expert Report of Peter Alexander Regarding Infringement of the '033 Patent with a

new infringement theory on independent claim 7 and dependent claim 8 of the '033 patent. *Id.*,

¶ 9.

     The parties filed claim construction briefs and summary judgment motions on October

13, 2005. Fitzpatrick Decl., ¶ 10. Business Objects also filed *Daubert* motions to preclude

testimony of Dr. Alexander and MicroStrategy's damages expert, Richard Troxel. *Id.* The Court

heard oral argument on the summary judgment motions and claim construction on November 21,

2005. *Id.* The parties had completed discovery prior to the hearing. *Id.* On January 23, 2005,

the Court issued its Memorandum Opinion and its Order granting Business Objects' summary

judgment motions. *Id.* The Court entered final judgment on February 23, 2006. *Id.*

## IV.   ARGUMENT

### A.   The Court May Award Business Objects Its Reasonable Attorney Fees And Expenses Incurred In Successfully Defending This Case.

     This was an unfounded case that MicroStrategy never should have filed. "The court in

exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. §285.

"[A]n award of attorney fees under Section 285 should include expenses incurred during

prosecution of the lawsuit." *Scott Paper Co. v. Moore Business Forms, Inc.*, 604 F. Supp. 835,

838 (D. Del. 1984) (citing *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573 (Fed.

Cir. 1983)).[1] *See* Fed.R.Civ.P. 54(d)(2) (motion for attorney fees and expenses may be filed no later than 14 days after entry of judgment).

Chief Judge Robinson summarized both § 285's purpose of protecting an unjustly accused defendant and the standards for judging whether a case meets the "exceptional" requirement:

> Where the prevailing party is an accused infringer, the purpose of §285 is to remedy the injustice to a party that must expend significant sums to defend itself against unfounded charges of patent infringement or vexatious litigation conduct. *See Automated Business Cos. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000). The Federal Circuit has held that among the circumstances that support a finding of an "exceptional case" are vexatious, unjustified, or otherwise bad-faith litigation. *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985). Defendants bear the burden of showing that the case is exceptional by clear and convincing evidence in light of the totality of the circumstances. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

*MLMC, Ltd. v. Airtouch Communications, Inc.*, C.A. No. 99-781-SLR, slip op. at 1-2 (D. Del. Sept. 19, 2002) (copy attached to Greco Declaration as Ex. 1). This Court has stated that the decision whether to award fees under § 285 takes into consideration "'[m]any factors . . . such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burden of litigation as between winner and loser.'" *C.R. Bard, Inc. v. United States Surgical Corp.*, 258 F. Supp. 2d 355, 359 (D. Del. 2003) (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)); *see also eSpeed, Inc. v. Brokertec USA, L.L.C.*, C.A. No. 03-612-KAJ, 2006 U.S. Dist. LEXIS 6638, at *51 (D. Del. Feb. 22, 2006).

---

[1] Business Objects acknowledges that the expenses awarded under §285 may no longer include expert witness fees, and makes no claim for such fees by this motion. *See, e.g., Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 376-79 (Fed. Cir. 1994).

6

**B.     The Court Should Award Business Objects Its Attorney Fees and Expenses Because MicroStrategy's Infringement Case On All Three Patents Was Vexatious, Unjustified And In Bad Faith.**

1.      **MicroStrategy's baseless infringement allegations are analogous to the defenses of willful infringers, against whom courts routinely award fees and costs under 35 U.S.C. § 285.**

Perhaps MicroStrategy filed this case to interfere with Business Objects' then pending acquisition of Crystal Decisions, Inc., or perhaps MicroStrategy simply intended to open another "front" in its war with Business Objects, which it was already waging on multiple grounds in the Eastern District of Virginia. Regardless of its strategic goals, MicroStrategy had a duty to ensure that this case was, and remained, founded on good faith infringement theories based on valid patents. MicroStrategy shirked that duty. Instead, MicroStrategy concocted a "shotgun" case, comprised of three patents and infringement allegations on 33 claims, which no prudent person would have considered well founded.

Business Objects was forced to unravel and prepare defenses to MicroStrategy's numerous and complex allegations. By spending the necessary time and expense, Business Objects was able to demonstrate in its summary judgment motions that MicroStrategy's allegations on all three patents were baseless. Of course, a district court always has discretion in deciding whether to award fees and expenses under § 285, even if it finds the case to be "exceptional." *See, e.g., eSpeed*, 2006 U.S. Dist. LEXIS, at *49-53. Nevertheless, courts tend to award attorney fees to plaintiffs when there has been a finding of willful infringement by defendants. *See, e.g., C.R. Bard*, 258 F. Supp. 2d at 359. A defendant commits willful infringement unless "a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997).

A plaintiff that brings and maintains a patent infringement lawsuit without sound reasons to believe that the patents are valid and infringed is no less culpable than a willful infringer for purposes of § 285. The Federal Circuit has held that "there is and should be no difference in the

7

standards applicable to patentees and infringers who engage in bad faith litigation." *Eltech Sys.*

*Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). The *Eltech* court held that:

> Where, as here, the patentee is manifestly unreasonable in
> assessing infringement, while continuing to assert infringement
> in court, an inference is proper of bad faith, whether grounded in
> or denominated wrongful intent, recklessness, or gross
> negligence.

*Id.* In a similar vein, the Federal Circuit held that:

> Provisions for increased damages under 35 U.S.C. § 284 and
> attorney fees under 35 U.S.C. § 285 are available as deterrents to
> blatant, blind, willful infringement of valid patents. The only
> deterrent to the equally improper bringing of clearly unwarranted
> suits on obviously invalid or unenforceable patents is Section
> 285.

*Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) (footnote omitted).

MicroStrategy's infringement allegations on the '033 patent were manifestly

unreasonable, and it asserted the '796 and '432 patents despite their obvious invalidity. Business

Objects addresses each of the three patents below to demonstrate why the case is exceptional and

why requiring MicroStrategy to bear Business Objects' attorney fees and expenses is "'a fair

allocation of the burdens of litigation as between winner and loser.'" *eSpeed*, 2006 U.S. Dist.

LEXIS, at *51 (quoting *S.C. Johnson & Son*, 781 F.2d at 201).

> 2.  **MicroStrategy's infringement case on the '033 patent was baseless.**

When it comes to the '033 patent, actions speak louder than words:  MicroStrategy

alleged infringement of 16 claims but abandoned all of its original allegations.

First, MicroStrategy's expert, Dr. Alexander, admitted in deposition that his infringement

theory on claim 7 (and thus on claims 8 and 21) was wrong.  Alexander Dep., 195:8-196:12;

465:13-16 (excerpts attached to Fitzpatrick Declaration as Ex. 4).  He admitted that the Business

Objects' "cache server," the part of the accused products on which he relied to find the "reducing

duplicate reports" element of these claims, played no role in "scheduled reporting," the feature of

the accused products on which he relied for the "asynchronous query" element of the claims (in

8

the preamble).  Alexander Dep., 195:8-196:12.  Almost a month after giving his deposition, Dr.

Alexander filed a "supplemental" expert report, abandoning his old theory, and substituting a new

"hybrid" theory on these claims.[2]  Fitzpatrick Decl., ¶ 9.  This tortured "hybrid" theory relied on

the "scheduled reporting" feature of the accused products to satisfy the "asynchronous reporting"

requirement, but then switched to the admittedly non-asynchronous "on-demand reporting"

feature of the accused products, which utilized the cache server, to satisfy the "reducing duplicate

reports" requirement.  As discussed below, the Court identified numerous fallacies in this theory

and granted summary judgment of noninfringement.

Second, MicroStrategy abandoned the other 13 claims of the '033 patent two days before

its opposition to Business Objects' summary judgment motions were due and covenanted not to

sue Business Objects again on those claims.  Greco Decl., ¶ 6 and Ex. 5.  This tactic of asserting

the '033 patent and then "retreating" after forcing Business Objects to spend time and money

developing a defense was not new.  MicroStrategy did much the same thing against another set of

Business Objects products in the Eastern District of Virginia.  Fitzpatrick Decl., ¶ 3.

Business Objects does not suggest that a plaintiff should be sanctioned simply because it

narrows its case during the course of litigation.  But that is not what happened here.  Prior to

expert discovery, claim construction and dispositive motions, Business Objects requested that

MicroStrategy narrow its 33-claim case (16 asserted claims on the '033 patent) by choosing a

smaller set of representative claims.  Greco Decl., ¶ 4 and Exs. 2 and 3.  MicroStrategy flatly

refused.  *Id.*, ¶ 5 and Ex. 4.  It was only after Business Objects deposed Dr. Alexander that

MicroStrategy began its retreat, first with the post-deposition "supplemental" report containing

the new "hybrid" theory on claims 7 and 8, and then with the wholesale dismissal of 13 of the

---

[2] The "supplemental" report explicitly addressed only claims 7 and 8, not claim 21.  But
MicroStrategy contended that claim 21, which has the similar "reducing duplicate reports"
element, also remained in the case.

'033 claims two days before its opposition to Business Objects' summary judgment motion was due. These are not the actions of a party that was narrowing its case in good faith based on newly discovered facts in the litigation; rather, MicroStrategy saw a baseless case crumbling and was trying to preserve some claim--any claim--to continue harassing its competitor, Business Objects.

MicroStrategy's abandonment of over 80% of its '033 infringement case on the eve of the deadline for filing its summary judgment opposition speaks for itself. MicroStrategy, which previously had steadfastly refused to narrow its case, did not have a viable opposition. Dr. Alexander's deposition left no doubt as to MicroStrategy's lack of admissible, credible evidence of infringement. *See, e.g.,* Business Objects' brief in support of summary judgment motion on '033 patent (D.I. 102) at 10-28; Business Objects' brief is support of its *Daubert* motion to exclude Dr. Alexander's testimony (D.I. 95) at 10-21. Business Objects will not repeat those arguments here. Again, MicroStrategy's eleventh hour abandonment of those claims speaks for itself.

MicroStrategy's attempt to re-do its infringement theory to salvage infringement allegations on claims 7, 8 and 21 was even worse. There was no excuse whatsoever for Dr. Alexander to have been wrong at his deposition on the technical facts concerning Business Objects' accused products. Business Objects had provided ample discovery of its products, including its source code, and had produced its software engineers for deposition. Fitzpatrick Decl., ¶ 5. Moreover, five months prior to Dr. Alexander's deposition, Business Objects' technical expert, Dr. Walter Rudd, had pointed out the technical error in Dr. Alexander's opinion on claims 7, 8 and 21. Dr. Rudd's rebuttal report, submitted March 14, 2005, explicitly stated his understanding that the accused "scheduled reporting" feature of the accused products "*do[es] not make any determination* whether a report requested by the user is the same as or substantially the same as any previously requested report such that a report is processed once and a result from the report is provided to each user making a request for that report." Rudd 3/14/05 Report (emphasis added) (excerpts attached to Fitzpatrick Declaration ¶ 7 as Ex. 3).

10

Still worse was MicroStrategy's submission of Dr. Alexander's "supplemental report." The new "hybrid" infringement theory was a tortured attempt to either completely read the "asynchronous reporting" requirement out of the claims, or, failing that, to find the "asynchronous query" requirement of the claims in one feature of the accused products ("scheduled reporting"), but then to reverse field and find the other required elements of the claim, including "reducing duplicate reports," in a different feature of the accused products ("on-demand reporting"). This cynical attempt to salvage some infringement theory on the '033 patent sought to dodge the plain fact that the accused products did not use the claimed invention. When the "on-demand reporting" feature was used, the product had no capability of performing "asynchronous query," and when the "scheduled reporting" feature was used, the product had no capability of reducing duplicate reports.

The Court rejected MicroStrategy's "hybrid" infringement theory as contrary to the '033 patent's plain claim language, specification and file history. Mem. Opp. at 14-17; 21-23. Of particular relevance is the Court's finding that:

> [I]n the context of the claim language and written description, Microstrategy's argument in the reexamination proceeding is highly significant. Microstrategy's current contention that claims 7, 8, and 21 relate to a feature that is separate from the asynchronous feature (D.I. 179 at 9-11; D.I. 191 at 26) is inconsistent with its dependence on the "asynchronously" limitation to distinguish those claims from the prior art during reexamination (D.I. 115, Ex. C, Response to Office Action Mailed March 14, 2003, at 3 & Attachment A at 9-10).

Mem. Opp. at 17. In *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615 (D. Del. 1989), the court awarded attorney fees under § 285 to a defendant that successfully moved for summary judgment on plaintiff's patent infringement claims. The *Multi-Tech* court found that the patent's prosecution history clearly showed that the patent did not cover the accused products and that this was a basis for finding the case "exceptional":

> [C]ontinuing to advance this case in light of the well-documented prosecution history, which indicates unequivocally that [the accused products] were excluded from the scope of the

DB02:5229759.1

900002.0011

> patent, is evidence that the plaintiff's actions were taken at the
> very least with gross negligence. This factor makes this case
> exceptional.

*Id.* at 622.

Because the Court found that MicroStrategy, like the plaintiff in *Multi-Tech*, advanced an

infringement theory clearly contradicted by the '033 prosecution history, the Court should find

this case to be exceptional and award Business Objects its fees and expenses. When this fact is

coupled with the other evidence of MicroStrategy's bad faith--waiting until the eve of summary

judgment oppositions to abandon over 80% of its numerous asserted '033 claims and creating the

baseless "hybrid" theory on claims 7, 8 and 21 after its expert admitted his initial theory was

wrong--this case presents an even stronger basis than did *Multi-Tech* for the award of attorney

fees and expenses.

### 3.    MicroStrategy's infringement case on the invalid '796 patent was baseless.

A basic tenet of patent law is: "That which would *literally* infringe if later in time

anticipates if earlier than the date of invention." *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d

744, 747 (Fed. Cir. 1987) (emphasis in original). MicroStrategy did not respect this black letter

law when it brought and pursued allegations that Business Objects' products infringed the '796

patent. The products MicroStrategy accused--Crystal Enterprise 9 and 10 and Business Objects

XI--were later versions of Business Objects' (Crystal Decisions') Crystal Info 6 product, which

was prior art to the '796 patent. Fitzpatrick Decl., ¶ 4. With respect to the '796 claims, the prior

art and the accused Business Objects'/Crystal Decisions' products were substantially identical.

Thus, MicroStrategy's assertion of the '796 patent was self-defeating: under the *Lewmar Marine*

test, either the '796 claims covered both the substantially identical prior art and the accused

products, and thus were invalid, or they covered neither the prior art nor the accused products,

and thus were not infringed. Because MicroStrategy did not disclose the Crystal Info 6 prior art

12

to the Patent Office during prosecution of the '796 patent, it had no reason to believe that the '796 claims would have issued over the Crystal Info 6 prior art.

The Court found the asserted claims of the '796 patent to be anticipated by the Crystal Info 6 prior art, stating that "[b]ecause Business Objects has presented clear and convincing evidence of anticipation under 35 U.S.C. § 102(b), and *MicroStrategy has failed to answer with any evidence*, I will grant that [Business Objects' summary judgment] motion." Mem. Opp. at 24 (emphasis added). There are cases where a patent owner may act reasonably by attacking a defendant's proof of alleged prior art, and relying on the presumption of validity. But this is not such a case. First, as stated above, MicroStrategy contended that the '796 claims *did* cover the accused products, which were substantially identical to the prior art product. Second, MicroStrategy's argument ignored the fact that the Crystal Info 6 manuals were themselves anticipating prior art, regardless of whether the actual product functioned in accordance with the manuals. Mem. Opp. at 25. Third, MicroStrategy's only attack on the declaration testimony of Ju Wu, which clearly established that the prior art product had all the elements of the '796 claims, was to contend that Mr. Wu was "biased" because he is a Business Objects employee. *Id.* at 25-26. Finally, as to the few claim elements that MicroStrategy argued were not in the prior art, MicroStrategy introduced no evidence to counter Business Objects' clear evidence that the Crystal Info 6 prior art did contain those elements. *Id.* at 26-27. As the Court found:

> In the face of evidence that those elements are found in the Crystal Info 6 manuals (D.I. 119, Ex. 2, App. G at 9-10, 13-14) and product (D.I. 118 at ¶¶ 12, 15), Microstrategy simply argues its doubts about whether or how features in the manual were implemented in the product. (D.I. 183 at 19.) That response is not sufficient to raise a genuine issue of material fact.

Mem. Opp. at 27.

The Court should find MicroStrategy's case on the '796 patent to be "exceptional" because it was a "clearly unwarranted suit[] on [an] obviously invalid . . . patent[]." *Mathis*, 857 F.2d at 754. Any accused infringer that litigated with such a lack of evidence to support its

13

*non*infringement defenses would surely be held a willful infringer, and would likely be ordered to pay the plaintiff's attorney fees and expenses. The same relief should be afforded Business Objects, an unjustly accused infringer that had to defend MicroStrategy's baseless infringement case. *Eltech*, 903 F.2d at 811 ("[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation.").

### 4. MicroStrategy's infringement case on the invalid '432 patent was baseless.

It is axiomatic that a defendant cannot be held liable for infringing an invalid patent claim. As with the '796 patent, MicroStrategy acted in bad faith by turning a blind eye towards whether the '432 patent reasonably could withstand a validity attack in court.

Any reasonable patent attorney who took the time to read claims 6, 9, 10 and 13, and the controlling Federal Circuit case law on indefiniteness, would have concluded that these claims were invalid. The glaring problem in independent claims 6 and 10--the "dangling" verb "using" that lacked an object--simply could not be "fixed" by a district court. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003); Mem. Opp. at 20-21; Business Objects' brief is support of summary judgment motion on '432 patent (D.I. 110) at 31-32; Business Objects' reply brief (D.I. 214) at 4-7. MicroStrategy had no reasonable argument to the contrary, and it did not need discovery from Business Objects to realize this. The Court ruled that the claims were indefinite and invalid. Mem. Opp. at 21; 24. While these claims also suffered from prior art invalidity problems, they had no reasonable chance of surviving an indefiniteness attack.

Claims 1, 2, 4, and 5 were drawn so broadly that they could not possibly have defined an invention, given the state of the art in June 20, 2001, when the '432 application was filed. Even MicroStrategy's expert witness, Dr. Alexander, conceded that he could not perceive any invention in the '432 patent:





...

Alexander Dep., 312:9-18; 313:5-21 (emphasis added).  A patent owner should at least heed its

own expert's opinion when deciding whether it reasonably can contend that a patent is valid.

But even more important, the Actuate e.Reporting Suite 4 clearly anticipated claims 1, 2,

4, and 5.  MicroStrategy did not disclose any information about Actuate e.Reporting Suite 4 to the

Patent Office, and thus the '432 patent issued without the Patent Office being allowed to see that

the Actuate system anticipated the '432 claims.

MicroStrategy's *only* argument that '432 claims 1 and 2 were not anticipated was that the

Actuate manuals were "not enabling." Mem. Opp. at 28.  This was itself a bad faith argument in

light of Dr. Alexander's above-quoted testimony of how much one of ordinary skill knew as of

June 2001.  Moreover, Dr. Alexander never read the deposition of Paul Rogers, the Actuate

software architect who designed e.Reporting Suite 4, or reviewed a 600+ page manual that

described in detail how to create communication between the e.Reporting Suite 4 "reporting

server" and "web server," precisely the connection that he opined was not enabled. *Id.; see also*

15

900002.0011

Business Objects' reply brief in support of its motion for summary judgment on the '432 patent (D.I. 214) at 10; Alexander Dep., 299:4-11, 303:6-18.

MicroStrategy's attempts to distinguish the Actuate e.Reporting system from dependent claim 4 (requiring a reporting server cluster) and dependent claim 5 (requiring an OLAP system) were similarly baseless. The evidence showed that (1) the Actuate e.Reporting system was capable of being configured with "reporting system clusters" (a configuration well-known in the art), and (2) regardless of how the Court defined "OLAP system," the Actuate e.Reporting system included such a system. Mem. Opp. at 28-30. The Court found both claims anticipated on these grounds. *Id.*

As with the '796 patent, the Court should find MicroStrategy's case on the '432 patent to be "exceptional" because it was a "clearly unwarranted suit[] on [an] obviously invalid . . . patent[]." *Mathis*, 857 F.2d at 754. The Court should award Business Objects its attorney fees and expenses incurred in having to defend MicroStrategy's baseless '432 claims. *Eltech*, 903 F.2d at 811.

### C.     The Attorney Fees and Expenses That Business Objects Requests Are Reasonable And Sufficiently Documented.

MicroStategy sought a 10% royalty on sales of Business Objects' flagship products, and thus sought damages in excess of $43 million. Fitzpatrick Decl., ¶ 11. MicroStategy also sought an injunction prohibiting sales of these products. *Id.* Business Objects had to defend this case vigorously.

MicroStrategy's "shotgun" approach of asserting three patents and 33 claims made the case expensive to litigate. It also made the case inappropriate for early resolution on summary judgment. Business Objects would have had to ask the Court for early, pre-claim construction attention on its dispositive motions. But unless Business Objects had filed substantially the same motions that it ultimately filed in October 2005, the case could not have been resolved completely. Moreover, discovery--including expert discovery--would still have remained. This

16

would have been less than an optimal environment for requesting the Court to specially consider summary judgment motions prior to the scheduled claim construction hearing.

Having employed the strategy of bringing a complicated, multi-patent, multi-claim case seeking drastic relief, MicroStrategy cannot now complain that Business Objects spent too much time defending the case. Business Objects did not "over-litigate"; rather, it selected its best noninfringement and invalidity arguments. Its summary judgment motions on the '033 and '796 patents raised noninfringement arguments, invalidity arguments based on one prior art product and accompanying literature, and invalidity arguments based on indefiniteness which melded with claim construction arguments. The same is true of the motion for summary judgment on the '432 patent, except that motion relied on two prior art products and accompanying literature.

Nor can MicroStrategy complain about Business Objects' counsel's hourly rates. In 2005, MicroStrategy filed a § 285 motion against Business Objects in the Northern District of California, which was denied. MicroStrategy's counsel (the Howrey firm) declared in support of the motion that their rates ranged from ███████ for a second-year associate ███████ for a partner with 15 years experience to ███████ for a partner with 30 years experience. Greco Decl., ¶ 7 and Ex. 6. The rates charged by Business Objects' counsel in 2004-05 were in line with—in fact, less than—these rates. *Id.*, ¶ 7.

The AIPLA Report of the Economic Survey 2005 ("AIPLA Survey") confirms that the Townsend firm's rates were reasonable, considering the size of the firm and the patent litigation specialty. *See* Greco Decl., ¶ 8 and Ex. 7 (excerpts of AIPLA Survey). For example, the AIPLA Survey found that the median maximum billing rate for IP work in firms of more than 100 attorneys was $525 and the third quartile (75%) was $600. *Id.*, Ex. 7 at F-20.

The total fees and costs that Business Objects expended were also reasonable by objective standards. The AIPLA Survey found the following "typical costs" for patent litigation with more than $25 million at stake in geographic areas with reasonable geographic relationships to this case:

**End of Discovery**

| Location[3] | Mean (Average) | First Quartile (25%) | Median (Midpoint) | Third Quartile (75%) |
|---|---|---|---|---|
| Philadelphia CMSA | $2,793,103 | $2,650,000 | $3,000,000 | $3,000,000 |
| Washington, DC CMSA | $4,468,000 | $3,000,000 | $4,000,000 | $5,000,000 |
| San Francisco CMSA | $5,710,000 | $2,275,000 | $3,000,000 | $3,875,000 |

**All Costs**

| Location | Mean (Average) | First Quartile (25%) | Median (Midpoint) | Third Quartile (75%) |
|---|---|---|---|---|
| Philadelphia CMSA | $4,712,500 | $4,400,000 | $5,000,000 | $5,000,000 |
| Washington, DC CMSA | 6,947,917 | $4,500,000 | $6,000,000 | $7,750,000 |
| San Francisco CMSA | $7,985,714 | $3,000,000 | $5,000,000 | $6,000,000 |

Greco Decl., Ex. 7 (excerpts of AIPLA Survey) at I-110.

The parties had completed discovery in this case prior to the hearing on the summary judgment motion in November 2005. Fitzpatrick Decl., ¶ 10. In fact, there were two fact discovery periods here, because over a year into the case, MicroStrategy decided to accuse Business Objects' newly introduced "XI" products, requiring Business Objects to produce documents and deposition witnesses relevant to that new product. *Id.*, ¶ 5. In addition to completing discovery, the parties had briefed claim construction, summary judgment, and *Daubert* motions. *Id.*, ¶ 10. Thus, from a standpoint of assessing the "progress" of the case in

---

[3] "CMSA" stands for "Combined Metropolitan Statistical Area." The Townsend firm is in the San Francisco CMSA, the Howrey firm has offices in both the Washington D.C. and San Francisco CMSAs, and the Court and both parties' local counsel are in the Philadelphia CMSA. *See* Greco Decl., Ex. 7 at 2-3.

18

terms of the AIPLA Report's statistics, it would be between "end of discovery" and "all costs."
The requested fees and expenses are reasonable in light of these standards. *See, e.g., Mathis*, 857
F.2d at 755-56 (referencing AIPLA survey of patent lawyer billing rates in considering
reasonableness of requested fees).

Business Objects has summarized the tasks that each attorney and paralegal at the
Townsend firm performed on a monthly basis, the hours spent, and the rate charged. Fitzpatrick
Decl., ¶ 13 and Ex. 6. Business Objects also has summarized the expenses incurred (not
including expert witness fees) on a monthly basis. *Id.* These monthly summaries give the Court
a fair explanation of the monthly expenditures, and the reasons for them. They were prepared
based on the monthly invoices that the Townsend firm sent to Business Objects, which list the
tasks that each attorney and paralegal performed each day and the total time spent on those daily
tasks. *Id.* As one would expect, these monthly invoices, which span approximately two years,
are voluminous. In addition, they contain descriptions of attorney work product and attorney-
client privileged communications that cannot be disclosed to MicroStrategy's counsel. *Id.* If the
Court requests, Business Objects will produce the entire invoices for the Court's inspection *in
camera.*

The documentation Business Objects has submitted is sufficiently detailed to support an
award under § 285. "[T]he trial court has *broad* discretion in calculating the amount of fees ... ."
*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1569 (Fed. Cir. 1988)
(emphasis in original). As the Federal Circuit has stated, "a district court itself has experience in
determining what are reasonable hours and reasonable fees, and should rely on that experience
and knowledge if the documentation is considered inadequate." *Slimfold Mfg. Co. v. Kinkead
Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991). Nevertheless, if the Court would like to
review the detailed invoices from which the summaries were created, Business Objects will
produce them *in camera* or provide other documentation or analysis that the Court may request.
*See* Fed.R.Civ.P. 54(d)(2)(C) ("The court may determine issues of liability for fees before

19

receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court.").

## V.   CONCLUSION

For the foregoing reasons, Business Objects respectfully requests that Court grant its motion under 35 U.S.C. § 285, find this to be an exceptional case, and award Business Objects attorney fees and expenses in the amount of $4,714,184.41, or in an amount that the Court otherwise determines to be reasonable under the circumstances of this case.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302)571-6600
*Attorneys for Defendant and*
*Counterclaimant*
*Business Objects Americas*

Of Counsel:

Daniel J. Furniss
Joseph A. Greco
Thomas F. Fitzpatrick
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, California 94301-1431
(650) 326-2400

60703635 v1

DB02:5229759.1

900002.0011

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on March 15, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street, P.O. Box 951
> Wilmington, DE 19801

I further certify that on March 15, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

### BY FEDERAL EXPRESS

> Joseph P. Lavelle, Esquire
> HOWREY SIMON ARNOLD & WHITE, LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC  20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

John W. Shaw (No. 3362)
jshaw@ycst.com
Andrew A. Lundgren (No. 4429)
alundgren@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorney for Defendant and Counterclaimant*

062917.1001