# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MICROSTRATEGY INCORPORATED,

Plaintiffs,

v.

CRYSTAL DECISIONS, INC. d/b/a Business Objects Americas,

Defendant.

Civil Action No. 03-1124-MPT

CRYSTAL DECISIONS, INC. d/b/a Business Objects Americas,

Plaintiff,

v.

MICROSTRATEGY INCORPORATED,

Defendant.

## MEMORANDUM OPINION

Richard L. Horowitz and David E. Moore, Potter Anderson & Corroon, LLP, Wilmington, Delaware.
Of Counsel: Joseph P. Lavelle, Jennifer L. Dzwonczyk and Brian Rosenthal, Howrey LLP, Washington, D.C.
Counsel for Plaintiff

Josy W. Ingersoll, John W. Shaw and Andrew A. Lundgren, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware.
Of Counsel: Daniel J. Furniss, Joseph A. Greco and Thomas F. Fitzpatrick, Townsend and Townsend and Crew, Palo Alto, California.
Counsel for Defendant

March 25, 2008
Wilmington, Delaware

Thynge, U.S. Magistrate Judge

## I. INTRODUCTION

This is a patent infringement case. Microstrategy Incorporated ("Microstrategy") sued Crystal Decisions, Inc. d/b/a Business Objects Americas ("BOA"). This court granted partial summary judgment in favor of BOA on invalidity of two patents and also granted judgment in favor of BOA on non-infringement of a third. BOA now moves for attorney fees and expenses pursuant to 35 U.S.C. § 285.[1]

## II. BACKGROUND

### A. Procedural Background

On January 23, 2006 the court granted in part BOA's motions for summary judgment. The court ruled that the asserted claims of Microstrategy's U.S. patent No. 6,567,796 ("the '796 patent") and 6,658,432 ("the '432 patent") were invalid and that BOA has not infringed the asserted claims of Microstrategy's U.S. patent No. 6,279,033 ("the '033 patent"). Subsequently, the parties stipulated that BOA would dismiss without prejudice its counterclaim seeking a declaration that the '033 patent is invalid. Final judgment was entered on February 23, 2006. On appeal the Federal Circuit affirmed.[2] BOA now seeks attorney fees and expenses pursuant to 35 U.S.C. § 285.[3]

### B. Factual Background

Microstrategy sued Crystal Decisions, Inc. for infringement of the '033, '796 and

---

[1] D. I. 248.

[2] *See Microstrategy, Inc. v. Business Objects Americas*, 238 Fed. Appx. 605 (Fed. Cir. 2007).

[3] "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. 285.

'432 patents on December 10, 2003. At that time, BOA had publicly disclosed that it was in the process of acquiring Crystal Decisions, Inc, and completed the acquisition the following day. BOA and Microstrategy were already involved in two other lawsuits when the instant matter ensued.

Opening expert reports were exchanged on February 22, 2005, followed by rebuttal expert reports on March 14, 2005. Dr. Alexander, Microstrategy's expert, filed a supplementary expert report on June 22, 2005.[4] BOA filed a rebuttal expert report from Dr. Rudd on July 22, 2005. Thereafter, both experts were deposed. Some issues arose concerning factual errors Dr. Alexander made regarding the operation of one of the accused products during his deposition on August 19, 2005. Thereafter, on September 14, 2005, Dr. Alexander submitted an amended report correcting his factual errors and explaining why those errors did not change his prior conclusions.

On October 29-30, 2005, two weeks after BOA submitted its opening summary judgment brief, Microstrategy deposed Dr. Rudd. Microstrategy subsequently withdrew 16 of the 33 asserted claims two days before its opposition to BOA's summary judgment motions were due.

**C. BOA's Contention**

BOA maintains that this case is "exceptional" within the meaning of 35 U.S.C. § 285 thereby entitling it to reasonable attorney fees and expenses. BOA alleges that there was never any merit to Microstrategy's claims. BOA urges that Microstrategy litigated this case in an "exceptional" manner by refusing to voluntarily narrow the scope

[4] Supplemental expert reports were submitted due to the addition of one of BOA's new products to the case.

of its claims prior to claim construction and case dispositive motions; by abandoning 16 of its 33 asserted claims two days before its answering brief was due; and by allowing a frivolous claim to go forward even though the evidence of invalidity was overwhelming.

Further, BOA states that Microstrategy failed to disclose prior art to the Patent Office which clearly invalidated the '432 patent and the '796 patent; that claims of the '432 patent contained a dangling verb ("using") without an object, a clear error under controlling law; that the claims were improperly broad; and that prior art, the Crystal Info 6 product, is an earlier and substantially identical version of BOA's products that Microstrategy accused of infringing the '796 patent. BOA contends that this conduct satisfies the level of bad faith required for a prevailing party to collect reasonable attorney fees.

BOA also maintains that the attorney fees and expenses it seeks are reasonable given the community norms for highly complicated patent litigation and the amount of time necessary to properly prepare. In sum, BOA requests the court award fees in the amount of $4,714,184.41, or an amount this court otherwise deems reasonable.

The thrust of BOA's motion is as follows: that Microstrategy's suit on the '033 patent was baseless and not narrowed in good faith; that it was clear that the asserted claims of the '796 patent were anticipated, but nonetheless Microstrategy pursued its claims; and that any reasonable attorney would have known that the '432 patent was invalid on some claims, overly broad on others, and clearly anticipated.

**D. Microstrategy's response**

Microstrategy counters that the case is not exceptional within the meaning of 35 U.S.C. § 285. Microstrategy argues that clear and convincing evidence of the bad faith

necessary to invoke § 285 does not exist. Microstrategy asserts that at all times it litigated this case in good faith, performed a thorough investigation of the patents, prosecution history and accused products and believed its patents were valid in light of the statutory presumption. Microstrategy contends that its good faith was shown when it voluntarily narrowed its case and re-examined its infringement theories in light of newly discovered evidence.

Microstrategy urges that regardless of the judgment in favor of BOA, this was a hard fought, close case, and Microstrategy's position was supported by the facts and law and was at all times within reason. Microstrategy argues that simply changing tactics during litigation does not warrant the imposition of sanctions or fee shifting.

Finally, Microstrategy states that should this court impose attorney fees, the amount sought by BOA is grossly unreasonable, does not prevent any gross injustice, and cannot be subject to any meaningful review by Microstrategy or this court.

**III. LEGAL STANDARD**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."[5] Conduct forming the basis for finding a case exceptional includes "willful infringement, inequitable conduct before the PTO, misconduct during litigation, vexatious or unjustified litigation, and frivolous suit."[6] Where the fee award concerns a prevailing accused infringer, the Federal Circuit has observed that § 285 "is limited to circumstances in which it is necessary to prevent a 'gross injustice' to the accused

---

[5] 35 U.S.C. § 285.

[6] *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

infringer".[7] The Federal Circuit has upheld findings of exceptionality to prevent such injustice "only when the patentee has procured its patent in bad faith or has litigated its claim of infringement in bad faith."[8] The party seeking the award must establish an exceptional case by clear and convincing evidence."[9] Additional considerations may include "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burden of litigation as between winner and loser."[10]

## IV. DISCUSSION

### A. The '796 Patent

BOA argues that because the '796 patent was clearly anticipated by Crystal Info 6 product, and it so informed Microstrategy, bad faith was established when Microstrategy nevertheless continued to pursue its claims. This court previously held any claims on the '796 patent invalid given the clear and convincing evidence of anticipation found in the Crystal Info 6 product and manuals.

Microstrategy counters that the arguments it previously made on summary judgment were not so objectively baseless and lacking in merit as to warrant exceptional status. Further, Microstrategy relies on the presumption of validity.[11] This court, however, found Microstrategy's arguments unpersuasive, noting that it failed to answer

---

[7] *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).

[8] *Id.*

[9] *Advanced Transformer Co. v. Levinson*, 837 F.2d 1081, 1085 (Fed. Cir. 1988).

[10] *S.C. Johnson & Sons, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).

[11] "A patent shall be presumed valid." 35 U.S.C. § 282.

with any evidence.[12]

BOA established that "the Crystal Info 6 product and manuals were in the public use and on sale more than one year prior to the '796 patent application date."[13] Microstrategy countered that the Crystal Info 6 product may not perform as described in the manuals. In rejecting that contention, this court noted that Microstrategy's argument "fails to address the fact that the manuals are themselves prior art and provide clear and convincing evidence sufficient to support a conclusion of invalidity."[14]

Microstrategy also attacked the credibility of BOA's witness, Mr. Wu, based on his involvement with the development of the Crystal Info 6 product, and claimed that his testimony was conclusory and lacked a detailed analysis of the claims and prior art. This court, however, found the testimony corroborated by the manuals which showed anticipation by clear and convincing evidence.[15] The court again emphasized that Microstrategy failed to produce contrary evidence.

Lastly, Microstrategy argued that the Crystal Info 6 product or manuals do not provide "predetermined performance criteria."[16] This court determined that claim element as clearly present in the Crystal Info 6 product, even under Microstrategy's proposed construction.[17] Microstrategy "simply argue[d] its doubts" as to two other

---

[12] *Microstrategy Inc. v. Business Objects Americas*, 410 F. Supp. 2d 348, 362 (D. Del. 2006).

[13] *Id.*

[14] *Id.* at 363.

[15] *Id.*

[16] *Id.*

[17] *Id.*

terms, which this court quickly rejected as not raising an issue of fact.[18]

Initially, Microstrategy accused Crystal Enterprise 9 and 10 products of infringement. The earlier, anticipating version of those products is the Crystal Info 6 product, arguably something Microstrategy should have uncovered prior to bringing suit. However, even after failing to discover the anticipating Crystal Info 6 product prior to bringing suit, Microstrategy was clearly aware of the Crystal Info 6 prior art by September 10, 2004 when it was served with BOA's response to interrogatories, or at the latest, March 14, 2005, when it received Dr. Rudd's expert report. At that point, Microstrategy was aware that the Crystal Info 6 product was anticipatory prior art. It was substantially identical to the accused products, and would make any claim of infringement unjustified. Even in the face of clear and convincing evidence of anticipation under 35 U.S.C. § 102(b), Microstrategy failed to reassess the merit of its claims under the '796 patent, and instead, proceeded without any evidence to the contrary. In light of the overwhelming evidence of anticipation, and the lack of any evidence to the contrary, Microstrategy's conduct was manifestly unreasonable in neglecting to reevaluate its position and continuing to assert claims under the '796 patent in the face of clear and convincing evidence to the contrary.[19]

**B. The '432 Patent**

BOA contends that the dangling verb "using" in claims 6, 9, 10 and 13 is apparent indefiniteness, and therefore, invalid to any reasonable attorney. BOA states that claims 1, 2, 4 and 5 were simply so broad that they clearly could not define any invention.

---

[18] *Id.*

[19] *Eltech v. PPG, Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990).

Further, BOA notes that the Acutate e.Reporting Suite 4 clearly anticipated claims 1, 2, 4 and 5.

Microstrategy notes that a loss alone does not automatically prove that fees should be awarded. BOA still must come forward with clear and convincing evidence of bad faith. It points to the presumption of validity. Microstrategy states that it relied on its expert regarding the term "using" and that none of the '432 claims were rejected by the Patent Office, which indicate that all claims were understandable. As for anticipation, Microstrategy argues that the prior art was not an enabling disclosure.

Concerning claims 6, 9, 10 and 13, BOA fails to come forward with clear and convincing evidence of exceptionality. Microstrategy presents a reasonable basis, which BOA has not refuted, to continue litigation on the these claims. Microstrategy relied on its expert, Dr. Alexander, who opined that "using" would be clear to a person of ordinary skill in the art as not intended to effect the meaning of the claim limitations. Similarly, during prosecution, none of the '432 claims were rejected by the Patent Office for indefiniteness. Further, BOA did not contend in its initial response to Microstrategy's interrogatories that the term "using" presented a basis of indefiniteness, which casts doubt on its present assertion that the indefiniteness of that term was readily apparent to any reasonable patent attorney.

Regarding claims 1, 2, 4 and 5, Microstrategy again relied on Dr. Alexander that the Acutate e.Reporting Suite 4 was not enabling – one of ordinary skill in the art would not know how to generate the HTML to DHTML from the information gathered from the database, or how to effectively communicate that information through the web server to the client system. Microstrategy asserts that its reliance on Dr. Alexander was

reasonable. However, Dr. Alexander admittedly did not review the Acutate e.Reporting Suite 4 manual, which details the precise connection that he opined was not enabling. Dr. Alexander admittedly did not review the deposition of Paul Rogers, the software architect and designer of the Acutate e.Reporting Suite 4. Further, in response to deposition questions, Dr. Alexander could not opine whether the combination of claim elements present in the '432 patent itself would not have been known to one of ordinary skill in the art at the time of its invention. Finally, Microstrategy never indicated how the manuals themselves were not enabling.

Microstrategy also argued that the prior art does not disclose a "plurality of reporting systems operating as a reporting systems cluster." The only evidence before the court indicated that the prior art does disclose a cluster, and Microstrategy did not come forth with any evidence to the contrary.

Microstrategy also claimed that the prior art does not contain an OLAP system as required by claim 5 of the '432 patent. As this court previously noted, "Microstrategy makes this argument by simply referencing its proposed construction of the 'OLAP system,' but fails to show how that construction matters."[20] BOA, however, demonstrated that the limitation is present under either party's construction.[21]

Concerning claims 1, 2, 4 and 5, Microstrategy was clearly notified of the defects in its case, yet continued to assert those claims in light of overwhelming evidence to the contrary, and proceeded with arguments that a reasonable attorney would have known were baseless. Such conduct supports bad faith.

---

[20] *Microstrategy*, 410 F. Supp. 2d at 365.

[21] *Id.*

### C. The '033 Patent

BOA argues that Microstrategy had no reasonable basis on which to bring infringement allegations on claims 7, 8 or 21 of the '033 patent. BOA points to Dr. Alexander's first expert report, which incorrectly posits that the "Schedule Now" feature on the accused product utilizes a "Cache Server" which operated to reduce duplicate reports, a feature essential for infringement of claims 7, 8 and 21. After BOA informed Microstrategy of the mistake through Dr. Rudd's March 14, 2005 expert report, Dr. Alexander admitted in August 2005 that his analysis of claim 7 was factually inaccurate. BOA emphasizes that Dr. Alexander waited until September 14, 2005 to submit an unauthorized supplemental report which employed a new, hybrid theory of infringement. Subsequently, Microstrategy dismissed 13 of its claims on the '033 patent, conduct that BOA contends "speaks for itself."

Again, Microstrategy urges that judgment in favor of BOA does not render this case "exceptional." Microstrategy contends that it narrowed the claims in good faith upon learning of Dr. Alexander's factual error, and thereafter, it proceeded on claims 7, 8 and 21 based on reevaluation of its infringement theories.

The dispute over the '033 patent centered on the whether the term "asynchronously" was a limitation, and if so, whether it required report requests to be submitted asynchronously.[22] In finding the term to be a limitation that requires report requests to be submitted asynchronously, this court looked to Microstrategy's own assertions before the PTO on reexamination. During reexamination, in order to

---

[22] *See Microstrategy*, 410 F.Supp. 2d at 357.

distinguish the '033 patent from prior art, Microstrategy argued that all independent claims required asynchronous operation. The reexamination proceeding made clear that the asynchronous limitation was a distinguishing feature. However, Microstrategy proceeded on a new theory of infringement arguing that claims 7, 8 and 21 relate to a feature that is separate from the asynchronous feature. As this court previously noted, "Microstrategy may not use the 'asynchronously' term in the preamble to distinguish the prior art and then ignore it when asserting the patent."[23]

Although Microstrategy reevaluated its claims and eliminated those not supported by its expert, once it was alerted to the defects in its case, it proceeded on a new theory of infringement that was in direct contrast to representations before the PTO on reexamination. Furthermore, Microstrategy fails to provide an explanation for the mistakes made by Dr. Alexander, or why it was unable to recognize the errors he made. In addition, the timing of Microstrategy's reassessment of the claims calls into question its motives and whether it, in fact, continued this action in good faith. Such conduct by Microstrategy supports bad faith, especially since this court, as affirmed by the Federal Circuit, found the arguments to be so one sided, that is, strongly in favor of BOA.

**D. Fees/Expenses**

The timeline indicates that by March 2005 it was manifestly unreasonable for Microstrategy to continue to pursue certain of its claims. Accordingly, BOA is entitled to reasonable fees and expenses incurred on those claims after that date.

Microstrategy contends that BOA fails to explain how the award of fees prevents

---

[23] *Microstrategy*, 410 F. Supp. 2d at 357; *See also Multi-Tech, Inc. v. Components, Inc.*, 708 F.Supp. 615 (D. Del 1989).

any "gross injustice."[24] The "gross injustice" involved in this case is forcing an alleged infringer to defend against apparent baseless claims.

Microstrategy also argues that there is no rationale provided for apportioning the requested amount to the particular alleged misconduct. For continued prosecution of claims made in bad faith, the rationale is clear – for its misconduct, Microstrategy is liable for the fees and expenses related to that defense. As a result, BOA must submit a detailed accounting consistent with this opinion.

The court also finds that BOA has provided ample evidence indicating that its requested rates for fees are reasonable. BOA has provided the billing rate and amount of hours charged by each attorney, the level of experience for a particular attorney, and an adequate description of each attorney's activities for a billing cycle. Further, expense statements have been provided. Finally, BOA submits a comparative analysis between the rates it seeks and a cost survey conducted by the American Intellectual Property Law Association which indicates litigation rates and total costs by geographic region. Thus, in contrast to Microstrategy's assertion, BOA has provided sufficient evidence to determine a reasonable attorney fee, such as "hourly time records, full expense statements, documentation of attorney hourly billing rates in the community for the particular type of work involved, the attorney's particular skills and experience."[25] Moreover, Microstrategy does not contest that the hours spent or the billing rates were unreasonable or excessive.

Therefore, the court finds that BOA's rates are reasonable and sufficiently

---

[24] *Forest Laboratories, Inc.*, 339 F.3d at 1329.

[25] *Junker v. Eddings,* 396 F.3d 1359, 1366 (Fed. Cir. 2005).

detailed. Consistent with that finding, BOA will be awarded its fees and expenses incurred after it served its expert reports on March 14, 2005 with the time and expenses excluded for defending claims 6, 9, 10 and 13 of the '432 patent, as BOA has not provided clear and convincing evidence of bad faith litigation concerning those claims. BOA, however, is entitled to fees and expenses incurred after March 14, 2005 defending the '796 patent, the '033 patent, and claims 1, 2, 4 and 5 of the '432 patent. BOA shall therefore provide a detailed summary of the time spent defending those claims, the hourly rates, expense statements, and other appropriate documentation consistent with this opinion.

**E. Conclusion**

For the reasons contained herein, BOA's motion for fees and expenses (D.I. 248) is DENIED in part and GRANTED in part.